JANVIER, Judge.
At about 10:15 o’clock in'the morning on -March 11, 1953, at the intersection of Chartres Street and Almonaster Avenue, in New Orleans, there was a collision between a Pontiac automobile owned by Leon L. Kohlmann and driven by his son in connection with the business in which Mr. Kohlmann is engaged, and a truck owned by the City of New Orleans and operated •in its Sanitation Department by an employee of the City, Frank S. Migliore.
The Pontiac automobile of Kohlmann was very badly damaged. He had obtained from Alliance Assurance Company, Limited, a policy of insurance under which the insurance company agreed to reimburse him all but $50 of such amount as might" be necessary to repair the car should it be damaged in collision. The said car was admittedly so badly damaged that $910.61 would have been required to repair it. The said insurance company paid to 'Kóhl-mann all but $50 of such amount and obtained from him a subrogation up to the amount paid. Kohlmann, finding it necessary to temporarily obtain another car for use in his business, rented his son's automobile for sixteen days and paid his son $6 per'day rental. Kohlmann and the* Alliance Assurance Company, Limited, brought this suit against the City of New Orleans and also against Frank S. Migliore, the employee who was operating the truck. The insurance company prayed for solidary judgment against the two- defendants in the sum of $860.61, the amount it had paid to Kohlmann, and Kohlmann prayed for solidary judgment against the two defendants in the sum of $146, $50 of which represented that part of the damage to his car for which he had not been paid by his insurer and $96 represented the amount he found it necessary to expend for' the rental of the other car which he required in his business.
The plaintiffs charged that Migliore,, the operator, of the truck of the City of New Orleans, was at fault in traveling at a, fast and excessive rate of speed, in failing to keep a proper lookout, in failing to have the truck- under control, in failing to be “attentive to his surroundings or the conditions of the ro.ad,” and “in failing to do any act by which -to avoid the accident.”
The City of New Orleans and Migliore filed exceptions of no cause of action and also 'a joint answfer in which they admitted the occurrence of the accident, but 'denied that Migliore had been in any way at fault. They then averred that the accident had resulted from negligence on the part of plaintiff’s son, Robert L. Kohlmann. They averred that young Kohlmann was negli *402 gent in the following .particulars: In that he was operating the car at an excessive rate of speed; in that he failed to have the Pontiac under control or to maintain a proper lookout, and in that he drove the Pontiac into the intersection “without having stopped in obedience to a stop sign posted on the corner of Chartres Street at the said intersection, and without having ascertained whether it was safe or proper for him to proceed into the intersection.”
When the matter was "called for trial it was agreed that, in so far as the City of New Orleans was concerned, the exception of no cause of action should be maintained and the suit against it should be dismissed.
After a trial there was judgment in favor of each plaintiff as prayed for against Mig-liore and the suit as against the City of New Orleans was dismissed.
The intersection in which the accident occurred is an unusual one. Chartres Street runs in a direction paralleling the Mississippi River and it is crossed by Almo-naster Avenue. Just on the Lake side of the intersection there is another street which merges with Almonaster Avenue so that on that side of the intersection there are two streets which converge, though, on the river side of the intersection, there is only one which is Almonaster Avenue.
The Kohlmann car, driven by young Kohlmann, was on Chatres Street going in an up-river direction, and the city truck, driven by Migliore, was on Almonaster Avenue going towards the Mississippi River. It is conceded that Almonaster Avenue is, by the appropriate City Traffic Ordinance, C.C.S. 18,202, accorded priority over Chartres Street, and it is further conceded that on the sidewalk of Chartres Street, facing young Kohlmann as he. approached the intersection, was a “Stop” sign which had been erected by the Traffic Department of the City of New Orleans. Young Kohlmann says that he stopped for the stop sign, .then “started off.” . He added: “I saw this big truck away down the street, seemed to be going at a very rapid rate-of speed, and I put on my brakes immediately and skidded, * * He says that his car came to a stop and was standing stationary when it was run into from the right by the truck which struck it after skidding about 30 feet. He says that when he first stopped at the Stop sign, he saw the truck, but “didn’t realize how fast it was going’”
Migliore, the driver of the truck, says that it was about 25 or 30 feet from the Pontiac when he first saw the Pontiac. He says that at that time “it was past the Stop sign coming towards the middle; ” that he applied his brakes and “slid the rest of the way to him.” When asked whether he had slowed down, he answered: “Why should I slow down? That’s a right of way street. He had business to stop at the sign.”
A disinterested witness, Lena Bourgeois, says that she was standing on the sidewalk at the corner and saw the entire accident. Referring to the Pontiac car, she says that it did not stop at the Stop sign, but “was coming down full speed.” Her veracity is attacked on the ground that she was acquainted with Migliore, the driver of the truck. After first stating that she did not know Migliore, she later admitted that she had met' him ‘at a dance sometime before the occurrence.
With Migliore on the truck was another city employee, Nick Peniciaro. Referring to the Kohlmann Pontiac he says: “ * * he came and never stopped .for the sign * ‡ * i>
It is very evident from the testimony of Migliore that he drove into the intersection with the assurance that, since he had the right of way, every one else must look out for him. It is well settled that the mere fact that the operator of a vehicle is entitled to the right of way does not give him the right to abandon all efforts at precaution and to drive into an intersection . without exercising some care to determine whether there is any other .vehicle in the intersection, or which is approaching it, at such speed- as to bring it into the intersection before his own vehicle can clear it.
*403 On the other hand, in spite of -the finding below, we are convinced from this record that Kohlmann did not stop at the Stop sign and that he drove into the intersection directly into the path of the oncoming truck which was approaching at a speed sufficiently great to indicate to him that he could not clear the intersection in time to avoid a collision.
Although the Kohlmann automobile apparently entered the intersection first, it cannot be said that it pre-empted the intersection. In Vernaci v. Columbia Casualty Co., La.App., 71 So.2d 417, 418, appears the following:
“ * * * pre-emption does not result from merely entering an intersection first. The motorist, before he can successfully rely on pre-emption, must show that he made entry into the intersection at proper speed and sufficiently in advance of the car on the intersecting road to permit him to proceed on his way without requiring an emergency stop by the other vehicle. The entry into the intersection just a fraction of a second ahead of the other vehicle does not create a pre-emption. # * * ”
In Hooper v. Toye Bros. Yellow Cab Co., La.App., 50 So.2d 829, .831, we considered the effect of not stopping at a Stop sign, or of stopping and not looking and, not properly appraising the danger of the situation and said:
“When confronted with a stop sign erected by the proper officials of the city, in addition to being legally obligated to bring his vehicle to a complete stop, a motorist is held to the duty of • appraising traffic conditions in the intersecting street, and of making certain that the way is clear for him to make a safe passage across the intersection; - It has been said that when a motorist stops his vehicle before entering a right of way street, he has performed only half of the duty which 1 the law imposes upon him. To stop and then proceed 'forward in the imme-' diate path of oncoming vehicles, constitutes gross negligence. See Glen Falls Ins. Co. v. Copeland, La.App., 28 So.2d 145.”
■ Our conclusion from this record is that had either driver been on the alert or exercised proper care this accident would not have occurred. Had young Kohlmann actually stopped at the intersection and seen the oncoming truck he should have realized that he could not clear the intersection in time. Therefore he was negligent in either not stopping, or in stopping at the sign and then failing to properly appraise and react to the apparent danger.
Since, the negligence of each driver contributed to the accident there can be no recovery.
Accordingly, the judgment appealed from is annulled, avoided and reversed and the suit of plaintiffs is dismissed at their cost.
Reversed.